***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Houser with minor modifications.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, which has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. On all relevant dates, an employment relationship existed between Plaintiff-Employee and Defendant-Employer.
5. On all relevant dates, Defendant-Employer was insured by the Phoenix Insurance Company.
6. On all relevant dates, Plaintiff's average weekly wage was $467.73, yielding a compensation rate of $311.82.
 *********** EXHIBITS
1. At the hearing before the Deputy Commissioner, the parties submitted the following documentary evidence:
 a. Stipulated Exhibit (1): A Packet of Various Stipulated Documents, which contained the following:
 (i) A Pre-Trial Agreement;
 (ii) Industrial Commission Forms; *Page 3 
 (iii) Medical Records;
 (iv) Plaintiff's Employment File;
 (v) Discovery Responses;
 (vi) A Transcript of Plaintiff's Recorded Statement; and,
 (vii) Social Security Disability Related Documents.
 b. Defendants' Exhibit (1): A Work Release Note.
 c. Defendants' Exhibit (2): An Out-Of-Work Note dated May 15, 2007.
 d. Defendants' Exhibit (3): A Portion of Plaintiff's Medical Records.
 e. Defendants' Exhibit (4): A Workers' Compensation Telephone Reporting Worksheet.
 f. Defendants' Exhibit (5): A Form Completed by Plaintiff's Nursing Supervisor.
2. The following depositions were received into evidence:
 a. Dr. Thomas S. Marlowe
 b. Dr. Jeffrey A. Baker
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was forty-seven (47) years of age with her date of birth being May 26, 1961. Plaintiff has obtained her GED and is a Certified Nursing Assistant (CNA). Plaintiff has worked as a CNA since the *Page 4 
early 1990s at a number of facilities. Plaintiff's employment history also includes working as a housekeeper at hotels.
2. Plaintiff testified that she sustained an injury to her back on or about May 25, 2007, while moving a patient from his bed to a recliner without assistance from co-workers and without a Hoyer patient lift.
3. Ms. Dorothy Moody Hunt, Defendant-Employer's supervisor of nursing, testified that, contrary to Plaintiff's allegations, a Hoyer lift allowing patients to be moved was present in all areas of the facility where Plaintiff worked and is standard equipment in any inpatient medical facility. Ms. Hunt further testified that employees were directed to use the lifts when moving any patient.
4. On May 25, 2007, Plaintiff was provided a return to work note allowing her to return to full duty work with no restrictions after four days. Plaintiff failed to timely present this note to her supervisor and has not returned to work for Defendant-Employer since May 25, 2007.
5. At the hearing before the Deputy Commissioner, Plaintiff acknowledged that, prior to May 25, 2007, she had inquired of Defendant-Employer about the possibility of obtaining short term and long term disability insurance coverage, but was informed that Defendant-Employer did not offer such coverage. Plaintiff asserted that the inquiry arose because she had pulled a muscle a couple of months prior, and denied that it had anything to do with any ongoing back condition.
6. Ms. Hunt testified that it was known that plaintiff had undergone prior medical treatment for non-work related low back conditions and was undergoing ongoing treatment for those conditions. *Page 5 
7. The Full Commission finds, based on the credible evidence of record, that Plaintiff had undergone treatment for back problems with numerous medical providers since at least April 26, 2000. Plaintiff's medical records indicate a long history of low back and bilateral radicular leg pain as well as use of prescription pain medications which had increased in the months leading up the alleged date of injury.
8. At the hearing before the Deputy Commissioner, Plaintiff denied recollection of much of her prior treatment for her lower back.
9. On February 20, 2006, more than a year before the alleged injury by accident underlying this claim, Plaintiff left the Emergency Department of Rowan Regional Medical Center against a physician's recommendations because she wanted to be provided with pain medications without undergoing any type of examination.
10. On March 19, 2007, two months prior to the alleged injury by accident, Plaintiff sought treatment from Dr. Timothy L. Daghenhart at RoMedical Care and reported experiencing lumbar back pain radiating into the legs and left buttocks that had been present for many months. Also on that date, Plaintiff denied having undergone any prior MRI of her lumbar spine even though she had undergone a lumbar MRI on May 25, 2003. Dr. Daghenhart diagnosed Plaintiff as having chronic low back pain and ordered a lumbar MRI to rule out a herniated disc.
11. On March 23, 2007, Plaintiff underwent the lumbar MRI ordered by Dr. Daghenhart which revealed lumbar degenerative disc disease, most prominent at the L4-5 and L5-S1 levels. Plaintiff advised the radiologist who conducted the MRI that her lower back pain and leg pain had been present for five (5) to six (6) months prior to March 23, 2007. The radiologist opined that since the prior MRI of May 25, 2003, Plaintiff's degenerative changes had progressed, resulting in more foraminal stenosis at the L4-L5 disc level. *Page 6 
12. On March 27, 2007, Plaintiff returned to RoMedical Care where her latest MRI results were reviewed with her by Jeff Taylor, PA. Based upon the results of the MRI, Plaintiff was referred to a pain clinic.
13. On April 3, 2007, Plaintiff was examined by Dr. Hans C. Hansen at the Pain Relief Centers. At that time, Plaintiff informed Dr. Hansen that her chronic back pain had escalated over the prior months, and she was provided an epidural steroid injection. Plaintiff received a second lumbar epidural steroid injection on April 30, 2007.
14. On May 21, 2007, only four days prior to the alleged injury, Plaintiff returned to Dr. Daghenhart and reported having run out of pain medication. At that time, Dr. Daghenhart informed Plaintiff that he could not provide her with any pain medications because of her treatments at the pain clinic. In response, Plaintiff informed Dr. Daghenhart that she was not returning to the pain clinic because she was dissatisfied with treatment she had received. Dr. Daghenhart then provided Plaintiff with a prescription for Tylox #40 and Hydrochlorothiazide and advised her that he would not provide her with any further narcotics.
15. On May 25, 2007, immediately following her alleged workplace injury, Plaintiff sought treatment at ProMed in Salisbury where she was examined by Dr. Thomas Marlowe. Medical records from that date reflect that Plaintiff had a pre-existing herniated disc at the L4-L5 disc level and was already treating with Dr. Hansen at the Pain Clinic. The medical records further reflect that Plaintiff reported experiencing a new back injury that is consistent with Plaintiff's testimony regarding the alleged workplace injury.
16. Dr. Marlowe, tendered as an expert in the fields of occupational medicine, urgent care, and bariatric medicine, reviewed x-rays of Plaintiff's back which, in his opinion, are more accurate for analyzing injuries to the bone structures than MRIs. Based on those x-rays, Dr. *Page 7 
Marlowe diagnosed Plaintiff as having Grade 3 anterolisthesis and a fracture of the pars interarticularis, a portion of the bone in her back. However, Dr. Marlowe acknowledged that his diagnosis, based on his reading of Plaintiff's x-rays, was inconsistent with the report of the radiologist who read Plaintiff's x-rays.
17. Dr. Marlowe compared the x-rays he took to Plaintiff's March 2007 MRI, which he testified revealed no displaced fracture of Plaintiff's spine and no fracture of the pars interarticularis at that time. Based on those differences, Dr. Marlowe opined to a reasonable degree of medical certainty that Plaintiff did not have a displaced fracture of the pars interarticularis prior to May 25, 2007. However, Dr. Marlowe expressed confusion regarding apparent inconsistencies between the radiologist reading of the March 2007 MRI and the reading of a subsequent May 30, 2007, MRI. Dr. Marlowe testified that it was possible that the March 2007 MRI had been erroneously read, but was unable to give any opinion as to the relative probability of such an error.
18. Dr. Jeffrey A. Baker, an orthopedic surgeon who was tendered as an expert in the field of orthopedics for the back and upper extremities, initially examined Plaintiff on June 11, 2007, and performed a discogram on July 27, 2007, that confirmed her pain was reproduced at the lower two levels of her discs and the pars defect. For her condition, Dr. Baker performed an L4-5 and L5-S1 decompression and fusion, addressing the level objectively confirmed by the discogram as causing Plaintiff's pain.
19. Dr. Baker testified that, prior to his deposition and based on his conversations with Plaintiff, he had believed Plaintiff had pre-existing degenerative changes to her lumbar spine, but had had no pain prior to the alleged incident giving rise to this claim. After reviewing medical records relating to Plaintiff's history of low back medical treatment prior to May 25, *Page 8 
2007, Dr. Baker opined that the conditions for which he treated Plaintiff were essentially the same as those for which Plaintiff had received treatment previously. Dr. Baker was therefore unable to opine to a reasonable degree of medical certainty whether the alleged workplace injury was the reason Plaintiff needed the medical treatment which he had provided.
20. The Full Commission gives greater weight to the testimony of Dr. Baker than to the testimony of Dr. Marlowe concerning Plaintiff's back condition, given Dr. Baker's expertise in backs and his direct involvement in Plaintiff's back surgery, and further given Dr. Marlowe's equivocation on the issue of causation.
21. On May 19, 2008, Dr. Zachariah Geiger of Rowan Regional Medical Center's Pain Clinic advised Plaintiff that she was no longer eligible for treatment at that facility. Plaintiff had previously signed an Opiod Agreement specifying that she would only use the pain medications prescribed by Dr. Geiger and would not obtain any pain medications from other sources. Plaintiff received prescriptions for Hydrodocodone and Cyclobenzaprine from Dr. Geiger on March 6, 2008. Plaintiff also received a prescription for Hydrocodone from Dr. Geiger on May 9, 2008. However, Plaintiff was advised that her May 8, 2008 urine sample indicated that she had not been taking the prescribed pain medications.
22. At the hearing before the Deputy Commissioner, plaintiff denied that she had failed to take the pain medications prescribed by Dr. Geiger even though urine samples will detect the presence of said pain medications for up to thirty (30) days after the last dose is taken. Plaintiff also denied that she had taken any additional pain medication prescriptions in 2008. However, the medical records reflect that Dr. Romanoff prescribed Hydrocodone to plaintiff on April 8, 2008; that Dr. Jaszewski provided a prescription for Hydrocodone to plaintiff on May 9, *Page 9 
2008; and that Ronald Lefler, PA-C, provided her with prescriptions on June 13, 2008, including Cyclobenzaprine, Methylprendnisolone, and Tramadol HCL.
23. The Full Commission finds Plaintiff's testimony to be not credible, particularly in regard to her back condition prior to May 25, 2007; the alleged injury of May 25, 2007, itself; and Plaintiff's receipt and use of pain medication for her back condition both before and after May 25, 2007.
24. Based upon the credible lay and medical evidence of record, the Full Commission finds insufficient evidence to find that Plaintiff sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer in the form of a specific traumatic incident or otherwise on or about May 25, 2008, or that such an alleged injury caused or significantly aggravated Plaintiff's existing back condition to such as extent as to require Plaintiff's subsequent medical treatment.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Based upon the credible lay and medical evidence of record, Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with Defendant-Employer in the form of a specific traumatic incident or otherwise on or about May 25, 2007. N.C. Gen. Stat. § 97-2(6).
2. Because Plaintiff has did not sustain a compensable injury by accident, she is not entitled to indemnity or medical compensation.Id.
 *********** *Page 10 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Under the law, Plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the 9th day of June 2009.
S/___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1